**Richmond**

ERNEST LINWOOD REED

v.

COMMONWEALTH OF VIRGINIA

No. 0516-91-2

Decided December 15, 1992

COUNSEL

R. Michael McKenney (James B. Gochenour, on brief), for appellant.

H. Elizabeth Shaffer, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**COLEMAN, J.**—Ernest L. Reed was convicted, in a bench trial, of driving after having been adjudicated an habitual offender. We reverse Reed's conviction because the record fails to show Reed knew at the time he was driving that he had been declared an habitual offender and ordered not to operate a motor vehicle pursuant to Code § 46.2-355. An essential element of the offense of driving after having been declared an habitual offender is that the operator knew at the time he operated a motor vehicle in Virginia that he was doing so after he had been declared an habitual offender and ordered not to drive. Accordingly, because the Commonwealth's evidence failed to prove an essential element of the offense, we reverse Reed's conviction and we remand the case to the trial court.

On December 6, 1990, Andrew Packet, the Chief of Police for the town of Warsaw, observed a blue wrecker twice swerve across the center line of Route 360. The wrecker was being operated by Ernest L. Reed. Officer Packet, who had been alerted that the wrecker possibly was being operated by an intoxicated driver, stopped the vehicle to see Reed's operator's license. Reed responded that he did not have his license with him. When Officer Packet radioed to check Reed's driving status, he learned that Reed had been declared an habitual offender. Packet arrested Reed and charged him with driving after having been declared an habitual offender.

At Reed's bench trial, the Commonwealth's evidence consisted of Officer Packet's testimony about the events leading to Reed's arrest and an order from the Circuit Court of Richmond County dated April 23, 1990, declaring Reed to be an habitual offender. That order stated that a Show Cause Order had been issued against Reed, that the order had been "duly executed" on him, that Reed had, "after due

and proper notice failed to answer or otherwise plead to the said Information and Show Cause Order," that the "Information, transcript and [DMV] abstract" had been "a part of the Show Cause Order executed on" Reed, that Reed was to be served in person with a certified copy of the order and that a copy was to be mailed to Reed at "Rt. 1, Box 367, Warsaw, Virginia 22572." A return of service on the order states that personal service was attempted on Reed at his "usual place of abode," but that Reed was not found there and "service was effected on William S. Reed." Defense counsel conceded during argument before the trial judge that service of the civil habitual offender order was made on Reed's father, "James or William," that the "show cause [order] was actually served on [Reed]," and that "[Reed] was given notice [by the show cause order] that he was going to be declared an habitual offender." Based on this evidence, the trial judge found that Reed had notice that he had been declared an habitual offender. The trial judge found Reed guilty of driving after having been adjudicated an habitual offender in violation of Code § 46.2-357. The judge sentenced Reed to one year imprisonment.

First, we address Reed's threshold argument that the trial judge erred by relying upon evidence that was not introduced, namely the show cause order and return of service of process upon Reed from the civil habitual offender adjudication, in order to find that Reed had actual notice of the civil habitual offender proceeding against him. Reed argues that the trial judge could not have found that Reed had notice that he had been declared an habitual offender unless the judge had judicially noticed the show cause order, its contents, and the return of service and then held that, based upon the actual notice of the civil proceeding, Reed had constructive notice that he had been declared an habitual offender. Reed argues that, because neither the show cause order nor return of service was introduced as evidence in the habitual offender prosecution, the trial judge could not properly have considered them as evidence, and the Commonwealth has otherwise failed to prove that, in the civil proceeding, Reed had constructive notice, assuming actual notice is not required, that he had been declared an habitual offender.

We reject Reed's assertion that the trial judge must have taken judicial notice of the civil adjudication proceeding in order to have found that Reed had constructive knowledge that he had been declared an habitual offender. The Richmond County Circuit Court order declaring Reed to be an habitual offender was admitted in evidence by

agreement of counsel. Upon the record before us, it is reasonable to conclude that the trial judge relied upon the habitual offender order and its contents, not the show cause order and return of service, to find that Reed had notice of the habitual offender adjudication. The habitual offender adjudication order recited the findings and legal holdings of the trial judge in the civil adjudication, including the finding that the show cause order which gave Reed notice of the show cause proceeding had been ''duly executed'' on Reed. The factual findings and conclusions of law contained in the civil adjudication order were sufficient to prove that Reed had been served with the show cause order and that he had notice that a civil proceeding was to be conducted for the purpose of declaring him to be an habitual offender. Therefore, we reject Reed's contention that the trial judge did not have evidence to support the finding that Reed had actual notice of the show cause proceeding and, thus, had constructive knowledge that he may have been declared to be an habitual offender in that proceeding.

We turn to the dispositive question of whether the fact that Reed had constructive notice, either by having been served with the show cause order for the civil habitual offender proceeding or the substituted service of the habitual offender adjudication order upon Reed's father, was sufficient for purposes of Code § 46.2-357 to convict Reed for driving after having been declared an habitual offender. The question is whether actual personal notice that one has been declared an habitual offender and ordered not to drive is required in order to obtain a criminal conviction under Code § 46.2-357.

■ Code § 46.2-357 provides that ''[i]t shall be unlawful for any person to drive any motor vehicle . . . on the highways of the Commonwealth *while the order of the court prohibiting such operation remains in effect.*'' (emphasis added). Code § 46.2-355 provides that in order to declare a person to be an habitual offender, the court shall

by appropriate order *direct the person not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth* for disposal in the manner provided in § 46.2-398. . . . Unless it appears from the record of the case that the person was present at the hearing in which the court found him to be an habitual offender, the clerk shall cause to be mailed to the person at his last known address appearing in the records of the case a copy of the habitual offender order.

(emphasis added).

The courts of some states have held that under their statutes making it an offense for an habitual offender to drive, the crime is one of strict liability, not requiring proof of *scienter* or *mens rea* as an element. *See, e.g., State v. Jones*, 231 Kan. 366, 644 P.2d 464 (1982); *State v. Grotsky*, 222 Neb. 39, 382 N.W.2d 20 (1986); *State v. Morrison*, 2 Ohio App. 3d 364, 442 N.E.2d 114 (1982); *State v. Buttrey*, 293 Or. 575, 651 P.2d 1075 (1982). Courts taking this approach have based the result on the state's right to exercise broadly its police powers. The courts of other states, however, have rejected this approach in favor of "the contemporary view . . . [which] disfavors strict liability offenses," *State v. McCallum*, 321 Md. 451, 456, 583 A.2d 250, 252 (1991), reasoning that the severity of the penalty in such cases removed them from the traditional "public welfare" and vehicle licensing offenses, and that an adjudication of guilt of such a serious criminal offense requires proof of knowledge or intent. *Id.*; *State v. Finger*, 72 N.C. App. 569, 324 S.E.2d 894 (1985); *State v. Crotty*, 597 A.2d 1078 (N.H. 1991) (knowledge of certification as an habitual offender is required before one may be convicted of driving after having been certified as an habitual offender); *State v. Keihn*, 542 N.E.2d 963 (Ind. 1989); *Gregory v. State*, 717 P.2d 428 (Alaska Ct. App. 1986); *State v. Jennings*, 150 Ariz. 90, 722 P.2d 258 (1986); *People v. Lesh*, 668 P.2d 1362 (Colo. 1983).

We believe that Code §§ 46.2-351 *et seq.*, by requiring that one be "direct[ed]. . . not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth" before a person can be guilty of driving a vehicle "while the order of the court prohibiting such operation remains in effect," Code § 46.2-355, requires proof of actual knowledge that one has been declared to be an habitual offender before one can be convicted of driving after having been so declared and ordered not to drive. Although Code § 46.2-357 does not expressly provide that the Commonwealth prove *scienter* or *mens rea*, we find that the provisions in Code § 46.2-355 that the order direct the person not to drive and to surrender his license, and the further directive that a copy of the order be mailed to the defendant if it appears he was not present, bespeak a requirement that the person receive actual notice of having been declared an habitual offender and directed not to drive before he can be convicted and imprisoned for driving after having been declared an habitual offender.

Our holding that an element of the offense as defined by Code § 46.2-357 requires proof of actual notice that one has been declared to be an habitual offender and directed not to drive is further dictated by the Supreme Court's holding in *Bibb v. Commonwealth*, 212 Va. 249, 183 S.E.2d 732 (1971). *See also Plummer v. Commonwealth*, 13 Va. App. 13, 15, 408 S.E.2d 765, 766 (1991). Although the *Bibb* case involved a different statutory offense, that of driving after an operator's license had been suspended by the Commissioner in violation of Code §§ 46.1-350 and -423.1 (now Code §§ 46.2-301 and -393), the Supreme Court reversed Bibb's conviction "[s]ince the evidence does not show that Bibb knew his license had been suspended." Code §§ 46.1-350, -423.1, and -441.2, which applied in *Bibb*, provided for notice of the administrative revocation proceeding, which notice requirement is similar to the notice requirement in Code § 46.2-355 of the civil habitual offender show cause proceeding. Both proceedings require notice by certified mail to the last known address of the operator of the suspension or revocation. Although Bibb had notice of the administrative revocation proceeding and, in fact, attended the hearing, he did not know what action the Commission had taken concerning suspension or revocation of his license. We reject the Commonwealth's contention that we should find that, because the notice which Reed received in the show cause proceeding told him, in effect, that he would be declared an habitual offender unless he appeared and showed cause why such action should not be taken, it gave Reed actual notice that he had been declared an habitual offender and ordered not to drive. Even if at the show cause hearing the onus of going forward with the evidence may arguably be upon the defendant, the burden of proof remains with the Commonwealth, and the trial judge must make an independent examination of the evidence to determine whether the person should be declared an habitual offender or the petition dismissed.

In the *Bibb* case, the Supreme Court necessarily held that constructive notice, by virtue of Bibb's knowing when the hearing was to be held and its purpose, was not sufficient to satisfy the statutory requirement that Bibb "knew his license had been suspended." Similarly, although Reed knew of the civil show cause hearing and had received notice of the DMV transcript and records wherein he was to be declared an habitual offender unless he appeared and showed cause why such result should not obtain, nevertheless, "the evidence does not show that [Reed] knew his license had been" ordered surrendered and

that he had been declared an habitual offender and directed not to operate a motor vehicle in Virginia. Furthermore, it would be incongruous under the statutory scheme in Title 46.2 to permit an operator to be convicted of a serious felony of driving after having been declared an habitual offender without requiring the Commonwealth to prove that the operator knew he had been declared an habitual offender and ordered not to drive, but to require the Commonwealth, in prosecuting for the traffic offense of driving on a suspended license, to prove that the operator actually knew his license had been suspended.

■ Next, we consider whether service upon Reed's father of the order declaring Reed to be an habitual offender and ordering Reed not to drive was sufficient, as substituted service, to satisfy the requirement under Code §§ 46.2-355 *et seq.* that the habitual offender have actual notice of his status. Serving the habitual offender order on Reed's father at Reed's usual place of abode, even if such service may have conformed with the requirements of Code § 8.01-296(2)(a), constitutes a form of constructive notice only. Constructive notice does not satisfy the statutory requirement contained in Code § 46.2-357, the requirement that Reed "knew his license had been suspended," that he had been declared to be an habitual offender and ordered not to drive.

Finally, citing *Head v. Commonwealth*, 3 Va. App. 163, 169, 348 S.E.2d 423, 428 (1986), the Commonwealth argues that because one accused of a felony may constitutionally be tried in his absence provided he has notice of the trial date and of the fact that he may be tried if he fails to appear, similarly, one constitutionally may be tried for driving after having been declared to be an habitual offender based upon constructive notice that a hearing would be held for a specified purpose on a date certain. The issue whether constructive notice would satisfy due process requirements in order to convict and incarcerate an individual is not before us. Code § 46.2-357 requires proof that the operator knew he had been adjudicated an habitual offender and directed not to drive.

Accordingly, we reverse Reed's conviction. Because the trial judge held that constructive notice of the show cause proceeding satisfied the notice requirement, the Commonwealth was not required to present evidence it may have possessed that Reed had actual notice that he had been adjudicated an habitual offender. Therefore, because we reverse Reed's conviction for trial error and, because such evidence

may have been available, we remand the case to the trial court for such further proceedings as the Commonwealth may be so advised.

*Reversed and remanded.*

Benton, J., and Fitzpatrick, J., concurred.