COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Bumgardner and Kelsey
Argued at Alexandria, Virginia


JAMES EDWARD BOLDEN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0500-03-4                      JUDGE D. ARTHUR KELSEY
                                                    NOVEMBER 30, 2004
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                              John E. Kloch, Judge

          Teresa E. McGarrity, Assistant Public Defender, for appellant.

          Josephine F. Whalen, Assistant Attorney General (Jerry W. Kilgore,
          Attorney General, on brief), for appellee.


        On appeal, James Edward Bolden challenges the sufficiency of the evidence supporting his

misdemeanor conviction for driving after having been adjudicated an habitual offender in violation

of Code § 46.2-357.  Finding the evidence sufficient, we affirm.

                                             I.

        We review the evidence in the "light most favorable" to the Commonwealth, the prevailing

party in the trial court.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786, cert.

denied, 124 S. Ct. 444 (2003).  "On appeal this Court must 'discard the evidence of the accused in

conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the

Commonwealth and *all fair inferences to be drawn therefrom.*'"  Parks v. Commonwealth, 221 Va.

492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82

S.E.2d 603, 606 (1954)) (emphasis added by Parks).

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In January 2003, Officer Rui Silva of the Alexandria Police Department stopped Bolden for speeding. At the officer's request, Bolden gave him his driver's license and registration. Officer Silva returned to his police cruiser and ran a computer check on Bolden's full name and birth date. The DMV database included three entries for Bolden. One identified Bolden as a "revoked habitual offender," listed his address as 47 West Reed Avenue in Alexandria, and noted his social security number as 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. The license associated with this entry was revoked on March 19, 1999. The second entry listed Bolden as living at 2422 S. Lowell Street in Arlington and possessing a valid driver's license with a 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 social security number. The license associated with this entry was initially issued on May 2, 2002. The third entry showed Bolden as an "unlicensed driver" living at 47 West Reed Avenue in Alexandria.

Officer Silva determined that the vehicle was registered to Bolden's wife at 47 West Reed Avenue in Alexandria. Officer Silva arrested Bolden and discovered in one of his pockets a social security card in his name bearing the number 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. When questioned, Bolden said he had never lived at 47 West Reed Avenue, Alexandria — despite the fact that one of his two licenses listed him as living at that residence and his wife identified that residence on the vehicle registration.

At trial, the Commonwealth argued that Bolden knew his license had been revoked as an habitual offender and fraudulently obtained a new license with the same name, birth date, and slightly different social security number. In support, the Commonwealth offered into evidence:

- A 1998 "Show Cause Summons – Habitual Offender" order issued by the Falls Church General District Court, personally served on Bolden (identifying his social security number as 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), requiring him to appear in court on February 14, 1999, to show cause why he should not be "declared an habitual offender" and have his "driver's license revoked."

- A DMV transcript for Bolden (also identifying his social security number as 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) showing that the Falls Church General District Court declared Bolden to be an habitual offender in 1999 and revoked his license. The final revocation order states that Bolden did not appear for this hearing. The DMV transcript states that the order was mailed to Bolden.

▪ An "Order of Court Revocation" notice mailed by the DMV to Bolden identifying his social security number as 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 and stating that his "privilege to drive a motor vehicle in Virginia has been revoked indefinitely."

The Commonwealth also presented to the trial court a 2002 application for a new driver's license signed by Bolden listing his birth date and using a slightly different social security number (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) than the one used on Bolden's prior license. Bolden answered "No" to a question on the 2002 application asking: "Have you been convicted within the past ten years in this state or elsewhere of any offense resulting from your operation of or involving a motor vehicle?" He also answered "No" to a question asking whether his "license or privilege to drive [has] ever been suspended, revoked, or disqualified in this state or elsewhere?" The DMV accepted this application and issued a second driver's license to Bolden.

Bolden presented no evidence at trial. Instead, his counsel argued only that Bolden did not have actual notice of his habitual offender status. Counsel did not assert, for example, that Bolden truthfully answered the questions about his prior driving record when applying for a second license, or that his social security number was inadvertently mixed up on the application, or that he truthfully denied that he ever lived at 47 West Reed Avenue, Alexandria (the address listed on his first license).

The "circumstantial evidence," the trial court held, "combined with the other evidence" demonstrated that Bolden knew of his habitual offender status. After finding Bolden guilty, the trial court sentenced him to ten days in jail and suspended an additional term of eighty days. Bolden appeals, again focusing only on the actual-notice element of the charge.

II.

We agree with Bolden that actual notice, not mere constructive notice, must be shown to support a conviction under Code § 46.2-357. See Reed v. Commonwealth, 15 Va. App. 467, 471, 424 S.E.2d 718, 720-21 (1992). Actual notice, however, can be proved by circumstantial

evidence.  See Etherton v. Doe, 268 Va. 209, 212-13, 597 S.E.2d 87, 89 (2004) (stating it to be

"axiomatic that any fact that can be proved by direct evidence may be proved by circumstantial

evidence"); see, e.g., Parrish v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) (noting that actual

knowledge "is a question of fact subject to demonstration in the usual ways, including inference

from circumstantial evidence" (citation omitted)).

In this case, the show cause order personally served on Bolden showed that he knew a

hearing had been set to determine whether he would be adjudicated an habitual offender.  After

he failed to appear, the revocation order was mailed to him.  These two facts, standing alone,

prove only constructive notice.  See Reed, 15 Va. App. at 472, 424 S.E.2d at 721.  But that does

not make them irrelevant.  It simply means other circumstantial evidence, if sufficiently

probative, must be presented for actual notice to be shown.

The trial court found the circumstantial evidence proved Bolden's actual notice.  The

record supports this finding.  A few years after (i) Bolden received actual notice of the habitual

offender show cause order and chose not to appear, and (ii) the DMV mailed the final revocation

order to Bolden, Bolden went to the DMV and filled out an application for a *second* license.

Despite a multitude of prior license suspensions and convictions for various traffic offenses,

Bolden falsely stated he had never had any in the last ten years.  Bolden also used a slightly

different social security number to preclude the risk of an exact match with his prior habitual

offender record.  Given these circumstances, a rational factfinder could find Bolden's deceitful

effort to obtain a second driver's license showed that he knew his first had been revoked.[1]

---

[1] On appeal, we ask whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)) (emphasis in original); see also Seaton v. Commonwealth, 42 Va. App. 739, 747-48, 595 S.E.2d 9, 13 (2004); Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003).  This understanding of the standard of review, which serves as a restatement of due process principles, ensures that we remain faithful to our duty not to "substitute our judgment for

Moreover, when stopped by Officer Silva, Bolden falsely stated he had never lived at 47 West Reed Avenue in Alexandria — the address Bolden listed on his previous license and on his wife's vehicle registration. This too shows Bolden's conscious, albeit unsuccessful, effort to deny any fact that would associate him with his previously revoked license.[2]

Bolden concedes on appeal that his subsequent deceptive conduct permits, at least in theory, the inculpatory inference of actual notice. But he claims it should not be drawn here because another, equally plausible, hypothesis of innocence exists: Bolden's deceptive application could have been motivated by his prior suspended license convictions, rather than any actual knowledge of his habitual offender status. Bolden's conviction, however, cannot be reversed on this ground.

When examining an "alternate hypothesis of innocence in a circumstantial evidence case," the question is not whether "some evidence" supports the hypothesis, but whether a rational factfinder could have found the incriminating evidence renders the hypothesis of innocence unreasonable. Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (citing Hudson, 265 Va. at 513, 578 S.E.2d at 785); see also Haskins v. Commonwealth, 44 Va. App. 1, 8-10, 602 S.E.2d 402, 405-06 (2004). Under this standard, we cannot reverse a criminal conviction based upon a hypothesis of innocence emerging from the "imagination of defense counsel," Walker v. Commonwealth, 42 Va. App. 782, 793, 595 S.E.2d 30, 35 (2004), particularly one raised for the first time on appeal, see Hudson, 265 Va. at 514,

_____

that of the trier of fact," Kelly, 41 Va. App. at 257, 584 S.E.2d at 447 (citation omitted), "even were our opinion to differ," Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (citation omitted).

[2] At oral argument on appeal, Bolden's counsel conceded that Bolden had a "motive to lie to the officer" during the traffic stop. Counsel denied, however, that this motive related to Bolden's awareness of his habitual offender status. It was instead, counsel argued, motivated merely by Bolden's awareness of his prior suspended license convictions.

578 S.E.2d at 786 (holding that "the issue of exclusion of reasonable theories of innocence is limited to those theories advanced by the accused at trial").

At trial, Bolden's counsel never mentioned the suspended-license hypothesis as an alternative explanation for the false statements on Bolden's license application. Nor did Bolden assert that the plausibility of that hypothesis renders all other incriminating inferences unreasonable. The trial court, therefore, had ample reason to accept the inculpatory inference that Bolden lied on his license application to avoid his prior habitual-offender revocation. This decision was well within the factfinding discretion of the trial court.[3]

### III.

Satisfied that sufficient evidence supports Bolden's conviction for driving after having been adjudicated an habitual offender, we affirm his conviction.

Affirmed.

---

[3] The trial judge did not attempt to compare and contrast the weight of the various competing inferences. He was not required to do so, however. The trial court's final decision comes to us with a presumption of correctness. Crest v. Commonwealth, 40 Va. App. 165, 172 n.3, 578 S.E.2d 88, 91 n.3 (2003). Unless that presumption is rebutted, the very fact of a conviction necessarily implies that the trial judge decided all legally relevant factual disputes against the defendant. It follows, then, that "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution[.]'" Wright v. West, 505 U.S. 277, 296-97 (1992) (quoting Jackson, 443 U.S. at 326).